UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LONI REGIER,

        Plaintiff,                                     Hon. Ellen S. Carmody

v.

                                                Case No. 1:17-cv-683

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal

standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 29 years of age on her alleged disability onset date. (PageID.193). She successfully completed high school and worked previously as a loan clerk and sales clerk. (PageID.77-78). Plaintiff applied for benefits on April 28, 2014, alleging that she had been disabled since January 4, 2013, due to VSD[1], cardiomyopathy, IBS (irritable bowel syndrome), depression, anxiety, and migraines. (PageID.193-96, 212). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.121-91). On April 7, 2016, Plaintiff appeared before ALJ Manh Nguyen with testimony being offered by Plaintiff, Plaintiff's husband, and a vocational expert. (PageID.85-119). In a written decision dated May 25, 2016, the ALJ determined that Plaintiff was not disabled. (PageID.67-79). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.32-36). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

**ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can

---

[1] Given Plaintiff's alleged heart impairments, this acronym appears to refer to Ventricular Septal Defect, a hole in the wall separating the two lower chambers of the heart. *See* Ventricular Septal Defect (VSD), available at https://www.heart.org/en/health-topics/congenital-heart-defects/about-congenital-heart-defects/ventricular-septal-defect-vsd (last visited on Aug. 22, 2018).

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) migraine headaches; (2) heart status post heart catheterization; (3) paresthesia; (4) irritable bowel syndrome (IBS); (5) obesity; (6) anxiety; (7) depression; (8) post-traumatic stress disorder (PTSD); (9) panic attacks; (10) a somatoform disorder; and (11) a personality disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any

---

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.69-72).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) she can occasionally lift/carry 20 pounds and can frequently lift/carry 10 pounds; (2) during an 8-hour workday, she can stand/walk and sit for six hours each; (3) she can frequently climb ramps/stairs, but cannot climb ladders, ropes, or scaffolds; (4) she can occasionally kneel, crawl, balance, stoop, and crouch; (5) she cannot work around unprotected heights or unguarded moving machinery; (6) she can tolerate occasional changes in the workplace; (7) she can carry out simple instructions; (8) she cannot work at a production rate pace, such as assembly line work; and (9) she cannot interact with the general public, but can occasionally interact with supervisors and co-workers. (PageID.72-73).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there

exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 118,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.115-18). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

I.        **Medical Evidence**

The administrative record contained more than 300 pages of treatment notes and statements from Plaintiff and her husband. The ALJ discussed this evidence at length. Specifically, the ALJ stated as follows:

> The claimant has irritable bowel syndrome, a heart ailment, and multifocal paresthesia (1F; 4F; 11F). The claimant has presented with complaints of dizziness, weakness, frequent h[e]art palpitations, and numbness in her extremities (1F; 4F; 5F; 11F; 15F). However, her treating physician, Curt J. Schubert M.D., indicated in April 2013, that preliminary laboratory evaluations and cardiac testing, which included a stress test and use of a Holter monitor, had been unrevealing (5F/12). Diagnostic testing results performed on the claimant's heart were normal. The results of the claimant's June 2013 cardiac consultation, March 2014 heart catheterization, and August 2014 electro diagnostic testing were normal (3F; 4F; 15F). Diagnostic imaging results from January 2014 and July 2014 revealed no evidence of an active cardiopulmonary process (12F).
>
> In May 2013, treatment providers noted that the claimant's involuntary movements had improved since her last visit (2F/5). Upon examination, the claimant has displayed a normal gait and station (2F; 5F; 11F; 16F; 17F). In addition, the claimant's physical examinations have been absent of spontaneous or involuntary

movements of all limbs (2F; 5F; 11F; 16F; 17F). Furthermore, the claimant's heart exams were regularly normal upon examination (3F; 4F; 15F). Specifically, her heart sounds were audible without murmur, gallop, clicks, or rubs (3F/6; 14F).

The claimant received treatment for her irritable bowel syndrome from treatment professionals Digestive Health Associates (1F; 10F; 18F). The claimant has presented with complaints of rectal bleeding, diarrhea, constipation, abdominal pain, cramping, and spasms (1F; 10F; 18F). Diagnostic examination results from September 2012 revealed that the claimant's right colon was unremarkable, but for the presence of abundant stool (1F/17). In February 2015, the claimant presented to Jeffrey Goldman, M.D., for treatment. Dr. Goldman linked the claimant's rectal bleeding to a February 2015 colonoscopy, which revealed that the claimant had hemorrhoids (18F/21). . . Treatment providers indicated that the claimant was constipated (1F/9). In September 2013, treatment providers noted that the claimant's irritable bowel syndrome had improved; she was able to discontinue her Linzess and Amitiza. The claimant was experiencing one bowel movement every three days and was rarely using Miralax (1F/5). The claimant has also taken dicyclomine, Librax, Senokot and Dulcolax for treatment (18F). Her treatment providers have instructed her to increase her fiber consumption and water intake, and the claimant has reported improvement in her condition (10F). Based on these conditions, the claimant is limited to performing work at the light exertional level. She can occasionally li[ft] and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand/or walk for six hours in an 8-hour workday. She can sit for 6 hours in an 8-hour workday.

The claimant is clinically obese, but this condition is not disabling. The claimant is five feet and four inches tall and has weight ranging from 181 to 196 pounds for a Body Mass Index between 31.07 [and 33.64] (2F/2; 16F/3). I have considered how weight affects the claimant's ability to perform routine movement and necessary physical activity within the work environment. I am aware that obesity is a risk factor that increases an individual's chances of developing impairments in most body symptoms. Obesity can cause limitation of function and the effects of obesity may not be obvious. The combined effects of obesity with other impairments may be greater than might be expected without the disorder. I have. . . considered any added or accumulative effects the claimant's obesity played on the claimant's ability to function, and to perform routine movement and necessary physical activity within the work environment. Based on the claimant's obesity, the claimant cannot climb ladders, ropes, and scaffolds. She can occasionally kneel and

crawl. She can frequently climb stairs and ramps. She can occasionally balance, stoop, and crouch.

The claimant has migraine headaches, depression, anxiety, post-traumatic stress disorder, panic attacks, a somatoform disorder, and a personality disorder (2F; 5F; 13G; 17F). However, the objective medical record indicates that symptoms caused by the claimant's conditions are not disabling. The claimant's underwent psychiatric hospitalization due to her mental impairments. However, this occurred back in 1998, which is well before her alleged onset date (7F). The claimant's MRI and EEG results have been unremarkable (2F/14; 11F).

The claimant has received treatment from Heather Lee, M.D., from January 2013 through December 2015 (2F; 11F; 16F). In February 2013, Dr. Lee increased her Topamax dosage from 100mg to 200mg in a two-week span and scheduled her for a follow up appointment three months later (2F/8). Treatment providers noted that the claimant used Imitrex sparingly and that it provided good rescue relief (2F/5). They decided to continue her on the same dosage of Imitrex and Topamax (2F). In September 2013, Dr. Schubert switched the claimant from Ativan to Xanax (SF/9). The claimant returned for treatment in November 2013, and stated that she was doing very well. She further stated that she had not experienced a headache since her Topamax adjustment, and that her dizziness had improved with treatment (2F/1). The claimant again complained of migraine headache symptoms in 2014, but follow up diagnostic testing and imaging from July 2014 and December 2014 produced normal results, and the claimant reported improved headaches in June 2015 after another Topamax adjustment (16F/3, 6). The claimant also reported in December 2014, that Zofran helped with her nausea (16F/9). Medical records also indicate that treatment providers prescribed the claimant Tylenol and Motrin for pain control, to be taken on an as needed basis (14E; 5F). The claimant has taken Xanax, Lexapro, and Buspirone for treatment of her mental impairments.

The claimant's mental status examinations do not support her allegations. Treatment providers noted that claimant has displayed an appropriate mood and affect upon examination (2F; 11F; 16F). Treatment providers have described her as cooperative (15F). She has shown a normal fund of knowledge, average intelligence, and intact cognitive function, concentration, and attention (2F; 5F; 11F; 15F; 16F; 17F). Treatment providers have also noted that the claimant has a good memory, has displayed good insight and

> judgment, and a linear, logical and goal directed thought process (2F; 5F; 11F; 17F). Based on these conditions, the claimant is limited to carrying out simple instructions. In addition, she cannot interact with the general public and can only occasionally interact with supervisors and coworkers.
>
> The claimant's allegations are inconsistent with the objective medical evidence. While the claimant has sought treatment from several medical professionals, she has shown improvement with relatively conservative treatment modalities (16F). The claimant's allegations are inconsistent with her diagnostic imaging and testing, and her physical and mental status examination results (1F; 2F; 5F; l0F; 11F; 13F; 15F; 16F; 17F). The claimant stated that she rarely goes outside her home, but she stated earlier that she goes outside five times a day and attends T-ball games in the summer (6E; Testimony). She also still engages in her hobbies: reading, watching television, Facebook, and listening to music (6E).

(PageID.73-75).

## II.         The ALJ Properly Evaluated the Medical Opinion Evidence

Plaintiff argues that she is entitled to relief on the ground that the ALJ failed to afford sufficient deference to the opinions of her treating physician, Dr. Rachel Plum. The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d

9

232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the

ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

On March 24, 2016, Dr. Plum completed a form report concerning Plaintiff's "ability to do mental work-related activities." (PageID.641-43). In completing this form, the doctor merely checked boxes indicating whether Plaintiff experienced mild, moderate, marked, or extreme limitations in various areas of functioning. These various categories, however, do not correspond to any specific functional limitations. Thus, it cannot be argued that this form report is inconsistent with the ALJ's RFC assessment. Furthermore, while the doctor supplemented this report by declaring that Plaintiff "is currently unable to work," this statement is entitled to no deference as whether Plaintiff is disabled is a matter reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1).

In sum, completion of this form report does not constitute a medical opinion which is entitled to any particular deference or to which the treating physician doctrine even applies. *See* 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2) (a medical opinion is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"); *Pelak v. Commissioner of Social Security*, 2016 WL 6694477 at *7 (W.D. Mich., Nov. 15, 2016) ("ALJs are not bound by conclusory statements of doctors, particularly where they appear on 'check-box forms' and are unsupported by explanations citing detailed objective criteria and documentation"); *Birgy v. Commissioner of Social Security*, 2017 WL 4081528 at *5 (W.D. Mich., Sept. 15, 2017) (same); *Dalton v. Commissioner of Social Security*, 2013 WL 1150711 at *5 n.3 (W.D. Mich.,

Mar. 19, 2013) (same). However, even if the form report completed by Dr. Plum is characterized as a "medical opinion," the result is the same.

In discounting Dr. Plum's opinion, as well as the opinion of another care provider who concurred with such, the ALJ stated:

> Rachel Plum, M.D. and Curt Schubert, M.D. were the claimant's treating physicians during the relevant period. The claimant received treatment from Rachel Plum, M.D., from March 2015 through March 2016, (13F; l7F; 19F; 20F). In March 2016, Dr. Plum opined that the claimant had moderate, marked, and extreme limitations in her ability to make occupation adjustments, moderate limitations in her ability to make performance adjustments, marked and extreme limitations in her ability to make social adjustments, and moderate, marked, and extreme functional limitations (19F; 20F). Dr. Plum stated that the claimant was suffering side effects from medication and opined that the claimant's anxiety, PTSD, and depression symptoms precluded her from working; Dr. Schubert concurred with Dr. Plum's opinion in an April 2016 statement (17F/3, 22; 19F; 20F; 21F).
>
> These opinions are inconsistent with the objective medical evidence. Dr. Plum's opinion contradicts her own mental status evaluations of the claimant (l7F/3). Treatment providers noted that claimant has displayed an appropriate mood and affect upon examination (2F; 11F; 16F). Treatment providers have described her as cooperative (15F). She has shown a normal fund of knowledge, average intelligence, and intact cognitive function, concentration, and attention (2F; 5F; 11F; 15F; 16F; 17F). Treatment providers have also noted that the claimant has a good memory, has displayed good insight and judgment, and a linear, logical and goal directed thought process (2F; 5F; 11F; 17F). Therefore, I accord both of these opinions little weight.

(PageID.76).

This conclusion is supported by the medical record. Dr. Plum's treatment notes are inconsistent with her opinion that Plaintiff suffers from extreme, work-preclusive limitations. Plaintiff began treating with Dr. Plum in March 2015. (PageID.510-15). Plaintiff was diagnosed with: (1) major depressive disorder, recurrent, chronic, severe without psychotic features; (2) post-traumatic stress disorder, chronic; (3) generalized anxiety disorder; and (4) panic

attacks, for which medication was prescribed. (PageID.514-15). Treatment notes dated May 28, 2015, indicate that Plaintiff's circumstance was improved with medication. (PageID.606). Treatment notes regarding Plaintiff's mental status between August 2015 and March 2016 were all largely unremarkable and were certainly inconsistent with the extreme opinions noted in the aforementioned form report. (PageID.577-78, 585-86, 589, 591-92, 587, 600). The only portion of Dr. Plum's treatment records which support the doctor's subsequent opinion are Plaintiff's subjective allegations which are contradicted by the doctor's own observations. Moreover, the ALJ determined that Plaintiff was less than fully credible, a determination which Plaintiff has not challenged. Accordingly, because the ALJ articulated sufficient reasons, supported by substantial evidence, to discount Dr. Plum's opinion, this argument is rejected.

**III.     The ALJ Properly Evaluated the Testimony of Plaintiff's Husband**

Plaintiff's husband, Nathan Regier, testified at the administrative hearing that Plaintiff was impaired to a far greater extent than the ALJ ultimately concluded. Specifically, Regier testified that Plaintiff is "pretty much bed-bound most of the day" and has been for "a couple years now." (PageID.109). Regier testified that Plaintiff "has a lot of dizzy spells" and is unable to shower without falling down. (PageID.111-13). In a report concerning Plaintiff's activities, Regier reported that Plaintiff must rest for 30 minutes after walking only 100-150 feet. (PageID.231).

The testimony or opinions offered by a lay witness "is entitled to perceptible weight only if it is fully supported by the reports of the treating physicians." *Simons v. Barnhart*, 114 Fed. Appx. 727, 733 (6th Cir. 2004). The ALJ discounted this evidence on the ground that it was inconsistent with the medical evidence. (PageID.77). This conclusion is supported by substantial evidence. Accordingly, this argument is rejected.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.


Dated: September 26, 2018                                             /s/ Ellen S. Carmody
                                                                                           ELLEN S. CARMODY
                                                                                           United States Magistrate Judge